UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA

      -against-                           No. 09-CR-709

ABRAR BHATTY,

                          Defendant.
-------------------------------------------------------------X


## SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT ABRAR BHATTY


Robert C. Gottlieb (RG1930)
LAW OFFICES OF
ROBERT C. GOTTLIEB
Attorneys for Defendant
Abrar Bhatty
111 Broadway, Suite 701
New York, NY 10006
TEL: (212) 566-7766

# INTRODUCTION

Abrar Bhatty comes before the Court for sentencing on January 27, 2012, following his guilty plea on August 27, 2010 to Count Three of the captioned indictment charging Mr. Bhatty with Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). We respectfully submit this memorandum in support of our request that the Court exercise its discretion and sentence Mr. Bhatty to a five-year incarceratory sentence, the statutory minimum.

Mr. Bhatty recognizes that he committed a serious crime and has taken responsibility for his actions. Mr. Bhatty, however, goes beyond his guilty plea. From the moment the FBI initially contacted Mr. Bhatty in July of 2009 to execute a search warrant, Mr. Bhatty cooperated with the authorities, admitted to his actions and agreed to provide a written statement.

Mr. Bhatty has led a law-abiding life but for this one single, albeit serious, set of circumstances. Accordingly, we respectfully request that the Court consider Mr. Bhatty's background and history which show him to be a kind-hearted, hardworking man who has worked tirelessly to provide his family with a stable and comfortable life. Mr. Bhatty is devastated by how his conduct has affected his family and he is ashamed and remorseful for what he has done.

As set forth below, we respectfully submit that a full consideration of the factors set forth in Section 3553(a) of Title 18 of the United States Code makes it

clear that sentencing Mr. Bhatty to the statutory minimum is a just, fair and reasonable punishment under the circumstances and will be sufficient but not greater than necessary to accomplish the goals of sentencing.

## FACTS AND PROCEDURAL HISTORY

On July 8, 2009, the FBI executed a search warrant at Mr. Bhatty's home. During the search, Mr. Bhatty cooperated voluntarily with the agents, answered their questions in detail, identified the computer equipment located within his home which contained child pornography, and provided a written statement in which he admitted freely that he downloaded and viewed images depicting child pornography. In addition, the FBI recovered two computers from Mr. Bhatty's home which forensic analysis confirmed contained images of child pornography.

On July 22, 2009, Mr. Bhatty was arrested and released the same day pursuant to a $100,000 secured bond. By Indictment, dated October 16, 2009, Mr. Bhatty was charged with three counts of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Over the next several months, defense counsel engaged in numerous discussions with the Government regarding Mr. Bhatty's case which included several proffer sessions with Mr. Bhatty.

On August 27, 2010, Mr. Bhatty pled guilty, pursuant to a plea agreement, to Count Three of the Indictment, charging him with one Count of Possession of Child Pornography. A copy of Mr. Bhatty's plea agreement is attached hereto as **Exhibit A**.

Since he was first arrested in July 2009, Mr. Bhatty has been under the supervision of Pretrial Services and has complied fully with all terms of his release. For almost three years, Mr. Bhatty has worn an electronic monitoring device and been subject to home detention with limited exceptions for matters such as employment, attorney visits, and court-ordered obligations.

As part of his conditions of Pretrial Services supervision, Mr. Bhatty submitted to psychological evaluation through New York Forensic[1] and continues to undergo extensive treatment. Presentence Investigation Report, dated March 10, 2011 ("PSR") ¶¶ 49-50. In the very first treatment session with his assigned psychotherapist, Karen Long, Ms. Long notes that Mr. Bhatty **"acknowledged his offending behavior and expressed remorse."** PSR at p.28. Over the past two years, Ms. Long documented Mr. Bhatty's progress. She indicates that Mr. Bhatty

---

[1]      At all times, Mr. Bhatty has been truthful during his evaluations and treatment and he denies the suggestion that the "test results [of the clinical interview] suggest that [Mr. Bhatty] is not being forthcoming with regard to his sexual history/interests." PSR at p.28. In addition, Mr. Bhatty denies that he frequented strip clubs, as the summary of the clinical interview states he admitted to. PSR at p.14.

**"has actively engaged in his treatment sessions, and has used them effectively to gain insight into his situation and develop better coping strategies."** *Id.* Consistently throughout her treatment notes, Ms. Long documents Mr. Bhatty's expressions of remorse and acknowledgment of the repercussions of his actions. Recognizing the fact that he was doing well in treatment, Ms. Long reduced the frequency of sessions from weekly to twice a month, and within the past six months, has reduced the frequency even further to once a month.

In addition, Mr. Bhatty met with Dr. Richard Krueger, a psychiatrist and a highly recognized expert in the diagnosis, treatment, risk assessment, and risk management of sex offenders. Salient excerpts from his evaluation report of Mr. Bhatty are set forth in the PSR. PSR at pp. 32-35. Notably, Dr. Krueger states that Mr. Bhatty

> **"<u>readily stopped the behavior</u> when a search warrant was served and he reports no impulses to engage in such behavior again. There is no indication that he has ever attempted to abuse a child in a hands on way.**
>
> **Overall, he has a good job and work history, a stable family life, and a stable residence, and takes responsibility for his illegal behavior and is in treatment for it. His <u>risk of another sexual crime is low</u>, and in my judgment, he has learned from the educative efforts of his arrest and the potential legal consequences, to a point where I would characterize <u>his risk of another sexual crime as remote.</u>"**

4

PSR at p.35 (emphasis added).

Mr. Bhatty met with the Probation Department with counsel and was fully compliant and cooperative with the interview process.

## A CONSIDERATION OF SECTION 3553(a) STRONGLY FAVORS A NON-GUIDELINES SENTENCE

Since the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory, but rather are advisory and constitute a factor to be considered by the sentencing court in fashioning a reasonable and appropriate sentence. In this case, we respectfully submit that a sentence of five years incarceration is one that is fair, just and reasonable.

The United States Supreme Court reiterated the importance of the sentencing court's discretion in fashioning an appropriate sentence for the particular criminal defendant before it in *Gall v. United States*, 552 U.S. 38 (2007). In *Gall*, the Court upheld a sentence of probation for a defendant in a drug conspiracy case who had withdrawn from the conspiracy and had demonstrated a laudable history of education and employment. The *Gall* Court specifically rejected the notion that only "extraordinary" circumstances can justify a sentence outside of the applicable Guidelines range, and likewise rejected "the use of a

5

rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 47. The Court further stated a sentence outside the applicable Guidelines range cannot be considered presumptively unreasonable. *Id.*

In *Gall*, the Court made clear that a departure from the Guidelines, even one resulting in an unusually lenient sentence, may be justified if the sentencing court can clearly explain why it is appropriate in a particular case with sufficient justifications. *Id.* *Gall* definitively instructs the sentencing court that a Guidelines calculation is a necessary starting point for determining a sentence, but cannot be the end of the court's analysis. The Second Circuit has confirmed that "a sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008).

The sentencing Court must evaluate and consider the factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. These factors include a consideration of the nature and circumstances of the offense and of the history and character of the defendant; an analysis of the general purposes of sentencing; the kinds of sentences available; Sentencing Commission policy statements; the need to avoid unwarranted disparities in sentencing; and of course the applicable Guidelines. 18

6

U.S.C. § 3553(a). *Gall* states clearly that the sentencing court's objective in considering these factors is to impose a sentence that is reasonable. *Gall,* 552 U.S. at 46.

## THE SENTENCING GUIDELINES

The United States Supreme Court ruled in *Booker* that in determining a defendant's sentence, the court should consider all of the factors set forth in 18 U.S.C. § 3553(a). *Booker,* 543 U.S. at 259-260. Included in these factors is a determination of the applicable sentence under the United States Sentencing Guidelines promulgated by the Sentencing Commission. *See* 18 U.S.C. § 3553(a)(4)(A).

Although *Booker* established that the Sentencing Guidelines are advisory and not mandatory on the sentencing court, and the calculated Guidelines sentence is to be considered by the Court as only one of several factors in determining a defendant's sentencing, we understand that the Court will still engage in a Guidelines analysis (*see United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)), and therefore we present herein our Sentencing Guidelines calculations and analysis.

The defense agrees with the calculations set forth in the PSR, *except* for the omission of a reduction of two points pursuant to U.S.S.G. § 2G2.2(b)(1), in light

of the limitation of Mr. Bhatty's conduct to the receipt and/or solicitation of material. Indeed, this two point reduction is included in Mr. Bhatty's plea agreement, to which the defense and the Government both agreed. *See* Ex. A, Plea Agreement at p. 3.

There is no evidence to suggest that Mr. Bhatty did anything other than receive child pornography. In fact, in his written statement which he provided to the FBI agents that same day, Mr. Bhatty denied sharing child pornography. *See* PSR ¶ 11 ("I have never shared or distributed child pornography from what I remember."). Furthermore, in his clinical interview, Mr. Bhatty reaffirmed his denial of sharing child pornography with others. *See* PSR at pp. 19, 20, 24. Accordingly, Mr. Bhatty should be afforded the two-point reduction, pursuant to U.S.S.G. § 2G2.2(b)(1).

For the Court's convenience, we include below a comparison of the Sentencing Guidelines calculations as calculated by the defense, the Government and Probation. PSR ¶¶ 84-95.

| | Defense/ Government | Probation |
|---|---|---|
| Base Offense Level (U.S.S.G. § 2G2.2(a)(2)) | 22 | 22 |
| Specific Offense Characteristics Material Involved Prepubescent Minor | 2 | 2 |

8

| | | |
|---|---|---|
| (U.S.S.G. § 2G2.2(b)(2)) | | |
| Specific Offense Characteristics Material Portrayed Sadistic Conduct (U.S.S.G. § 2G2.2(b)(4) | 4 | 4 |
| Specific Offense Characteristics Use of Computer for Possession of Material (U.S.S.G. § 2G2.2(b)(6)) | 2 | 2 |
| Specific Offense Characteristics Offense Involved at Least 600 Images (U.S.S.G. § 2G2.2(b)(7)(D)) | 5 | 5 |
| Defendant's Conduct Limited to Receipt or Solicitation of Material (U.S.S.G. § 2G2.2(b)(1)) | -2 | 0 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(a), (b)) | -3 | -3 |
| **TOTAL** | **30** | **32** |

All parties agree that Mr. Bhatty should be considered a <u>Criminal History Category I offender</u>, based on the fact that the instant case stands as Mr. Bhatty's only contact with the criminal justice system.

Accordingly, the applicable sentencing ranges are set forth below:

| | Defense/ Government | Probation |
|---|---|---|
| **Applicable Sentencing Guideline Range** | **97-121 months** | **121-151 months** |

## MR. BHATTY'S COOPERATION

Mr. Bhatty made himself available to the Government at all times for any

9

purpose related to the charges set forth in the Indictment.  Over the course of the Government's investigation and prosecution, Mr. Bhatty met several times with the Government to provide them with information related to his conduct, as well as to explore the possibility of cooperating in other related investigations.  During these meetings, Mr. Bhatty provided the Government with truthful and honest information.  Mr. Bhatty was also willing and made himself available to be a participant in any undercover operation and to testify at any proceeding as directed by the Government.

In addition, Mr. Bhatty, with the assistance of separate counsel, met with the Government with respect to other areas of possible investigation unrelated to the Indictment for which he also offered to assist and make himself available.  The Government ultimately declined to utilize Mr. Bhatty in any additional investigations.

Although Mr. Bhatty has not assisted the Government with other prosecutions or investigations, we respectfully urge the Court to take Mr. Bhatty's willingness to cooperate into consideration when determining his sentence.

## THE PARSIMONY CLAUSE OF SECTION 3553(a)

Although reasonableness is the primary concern for the Court in sentencing, it is not the only concern.  In the so-called "parsimony clause," section 3553(a)

dictates that the court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing that are set forth in that statute.  18 U.S.C. § 3553(a)(2).  Those purposes are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *see United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing parsimony clause).

Here, the Guidelines as calculated by the defense call for a sentence of 97-121 months.  We respectfully submit, however, that a five-year incarceratory sentence for Mr. Bhatty is more than sufficient to address and satisfy the purposes of sentencing as set forth above.

## A FIVE YEAR SENTENCE IS THE FAIREST AND MOST REASONABLE SENTENCE FOR MR. BHATTY

The "3553(a)" factors to be considered by this Court include the nature and

11

circumstances of the offense; the history and characteristics of the defendant; the need for the imposed sentence to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to deter criminal behavior in both the defendant and the public; to provide the defendant with needed rehabilitation or training; and the need to avoid sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a). We submit that a consideration of these factors strongly favors a non-Guidelines sentence for Mr. Bhatty. Certainly, the crime for which Mr. Bhatty stands before the Court for sentencing is a serious one. His behavior is regrettable; however, in light of Mr. Bhatty's background, history and life, a prison sentence longer than five years is not necessary to deter him from additional criminal acts or to send a message to the public that such conduct will not be tolerated.

We respectfully ask the Court to consider that Mr. Bhatty's crimes were largely passive. There have never been any allegations that he chatted inappropriately with minors or sought to meet minors in person and Mr. Bhatty vehemently denies any such conduct. Any online discussions occurred with individuals who he believed were adults and who, in fact, were adults. Mr. Bhatty recognizes the serious harm caused to the victims of child pornography and is extremely remorseful for his actions.

12

Mr. Bhatty's conduct occurred well over two years ago. Since that time, Mr. Bhatty has led a law abiding life. Upon the FBI's execution of the search warrant at his home in July 2009, Mr. Bhatty immediately discontinued his illegal behavior. His criminal conduct stands as an anomaly in an otherwise unblemished life. It is without question that Mr. Bhatty will never repeat this conduct, regardless of the sentence imposed by the Court. Indeed, Dr. Krueger states in his evaluation that he **"characterize[s] [Mr. Bhatty's] risk of another sexual crime as <u>remote</u>."** PSR at p.35.

Additionally, Mr. Bhatty freely and expeditiously cooperated and entered into a plea agreement with the United States Attorney's Office, which demonstrates an appreciation of the serious repercussions of his actions and an attempt to make amends for his wrongdoing.

This case stands as Mr. Bhatty's first and only contact with the criminal justice system. He complied with all the obligations of surrender without fail. Mr. Bhatty is a father of two children whom he adores, a loving husband of twenty years, and the primary source of financial support in his home. He has consistently maintained employment as a computer consultant. The Court can be assured that Mr. Bhatty has learned his lesson and is not a risk for reoffense.

From the beginning of the case, Mr. Bhatty has shown that he has great

13

remorse for his wrongdoing, and has already paid a heavy price for it.  Mr. Bhatty felt overwhelming shame when confronted by law enforcement, especially given the nature of his offense.  Reports of his arrest were published in the media alerting his community to the criminal charges filed against him and, as a result, his private life has been discussed, revealed and scrutinized by numerous individuals.  Without question, Mr. Bhatty is overwhelmingly humiliated by his actions and he knows that he has only himself to blame.

## MR. BHATTY'S BACKGROUND AND CHARACTER

Mr. Bhatty was born on March 2, 1968 in Lahore, Pakistan to Zulfiquar Ali Bhatty and Naseem Mary Akhtar.  His father, Zulfiquar, was a civil engineer and general manager of a construction company; his mother, Naseem, was a homemaker.  Mr. Bhatty's father passed away in 1999.  His mother, who is in her late 70s, still resides in Pakistan.  She recently suffered a stroke and her recovery process has been slow.  Because of his travel restrictions, Mr. Bhatty has not traveled to visit his mother, which has added further to his distress.  He is faced with the real possibility that he may never see his mother again because of his incarceration and her declining health.

Mr. Bhatty fondly recalls his childhood, describing it as "wonderful."  He has always had a close family.  Mr. Bhatty's parents provided a stable and

comfortable life for their children, a life which Mr. Bhatty himself has sought to similarly provide to his own wife and children.

Mr. Bhatty is the youngest of three brothers.  Growing up, Mr. Bhatty was consistently compared to his older brothers who had performed better in school than Mr. Bhatty.  As a result, Mr. Bhatty lived in the shadows of his brothers. Even though Mr. Bhatty was far from an underachiever, the constant comparisons to his brothers drove Mr. Bhatty to work harder in school and in life.

Mr. Bhatty loves his brothers deeply and both of them are aware of the criminal charges and remain supportive.  Mr. Bhatty's oldest brother, Azhar Bhatty, is a civil engineer and lives in Lahore with his wife, Dasneem, and Mr. Bhatty's mother.  Despite the distance, Mr. Bhatty regularly speaks with Azhar.  In his letter, Azhar requests leniency and explains how Mr. Bhatty has **"enriched our lives with his unwavering love and support."**  Exhibit B.[2]

Mr. Bhatty's other brother, Asad Ali, lives in New Jersey with his wife, Farah, and their two children.  As the Court may recall, over the past two years,

---

[2]     Attached hereto as **Exhibit B** are copies of letters, submitted on behalf of Mr. Bhatty, in which the authors recount how Mr. Bhatty has had a positive impact upon them and how much they appreciate having him in their lives.  We encourage Your Honor to review the letters in their entirety, but include several excerpts throughout this Memorandum for the Court's convenience.

Mr. Bhatty has sought and obtained Court approval to visit with Asad. In his letter, Asad confirms Mr. Bhatty's adherence to his restrictions: **"I can vouch for the fact that the few times he had been allowed to come over to my home, he has been very cautious of ensuring that he follows the guidelines and time limitations."** Exhibit B.

More importantly, however, Asad explains how Mr. Bhatty's travel restrictions have been especially **"devastating"** to their mother who has not been able to see her son since her stroke. Moreover, because of his mother's age and frail health, Mr. Bhatty has chosen not to inform his mother of the criminal charges against him, which was a painful decision, but one in which he has his mother's best interests in mind.

Mr. Bhatty comes from a family of successful engineers and it was always expected that he would continue with that tradition. Indeed, his maternal grandfather, his father and both of his brothers all became engineers. Mr. Bhatty, however, never had an interest in engineering – computers have always been his passion.

Although Mr. Bhatty's interest was working with computers, he followed family tradition and received his bachelors in civil engineering in 1991 from the University of Engineering and Technology in Lahore, Pakistan. He did, however,

manage to integrate his love of computers into his curriculum and always found opportunities to hone his computer skills when he was not studying.

Upon graduation, although his degree was in engineering, Mr. Bhatty obtained two positions in the field of computer science, one of which was teaching computer science classes part time at the Pakistan American Institute of Management Sciences ("AMIS"), which was affiliated with the City University of New York ("CUNY"). During a visit to AMIS by CUNY faculty, Mr. Bhatty was observed teaching and was offered the opportunity to obtain his masters in the United States if he would teach at CUNY. Seeing an excellent opportunity to provide a better life for himself and his family, Mr. Bhatty readily accepted the offer.

Mr. Bhatty married his wife, Fariha, in 1992. Although his marriage was an "arranged" marriage, as was the custom in his family, Mr. Bhatty knew and cared for Fariha before they were wed. Over the past twenty years of marriage, their love for each other has only deepened.

Mr. Bhatty was scheduled to begin teaching classes at CUNY in the spring of 1994. Fariha had to remain in Pakistan because CUNY would not sponsor Mr. Bhatty's family's visas until he received his first set of grades. Prior to Mr. Bhatty's departure, Fariha became pregnant with a scheduled delivery date of the

17

Summer of 1994.  As a result, Mr. Bhatty delayed his start date with CUNY in order to be with his wife throughout the duration of her pregnancy.  Mr. Bhatty's son, Awwab Ali, was born on July 27, 1994.

Soon thereafter, when he was only 26 years old, Mr. Bhatty flew to New York City to begin a new chapter in his life.  The transition to the United States was a difficult adjustment for Mr. Bhatty who had no friends or relatives in New York.  It was especially difficult because he was now separated by thousands of miles from his wife and his newborn son.  Mr. Bhatty knew, however, that these sacrifices would ultimately result in his ability to provide a better life for himself and his family.

Finances during this time were also tight.  Teaching at CUNY provided Mr. Bhatty with only six hours of pay, which was not nearly enough to support himself and his family in Pakistan.  As a result, he was forced to locate additional employment as a teacher's assistant and a research assistant.  Also, the rules of his school limited him to working no more than 18 hours per week, which made it difficult to earn a sustainable income .

Despite Mr. Bhatty's significant family, work and academic responsibilities, Mr. Bhatty received straight As on his first mid-terms, and consistently maintained excellent grades thereafter.  As a result, CUNY agreed to sponsor visas for Mr.

18

Bhatty's family.  Mr. Bhatty was finally reunited with his family on December 24, 1994.

Mr. Bhatty soon realized that there were some sacrifices which he was unwilling to make – one of which was to go without health insurance.  Because CUNY would not provide health insurance to his family, Mr. Bhatty decided to stop working at CUNY and obtain a full time position in the private sector with a benefits package.  After obtaining school approval, in the summer of 1995, he obtained a job working as an Information Technology consultant with Avesta.

During this incredibly stressful time in his life, Mr. Bhatty taught two classes, took nine school credits and worked a full time job.  His typical day started at 5:00am and ended at 10:30pm.  His weekends were spent completing his school assignments.  After all of his hard work, Mr. Bhatty eventually received his Master's Degree in Software Engineering, graduating with a 3.75 GPA.  He chose not to pursue a PhD, despite requests by CUNY, because he wanted more time to spend with his family.

Over the years, Mr. Bhatty has maintained consistent employment in his chosen field and has never been subjected to any disciplinary action.  While at Avesta, Mr. Bhatty was regularly sub-contracted out to ConEd, where he worked on numerous successful projects and ConEd repeatedly requested Mr. Bhatty for

19

projects.  Over time, Mr. Bhatty became frustrated with working as a consultant

through a consulting firm and the limited opportunities for financial advancement.

He decided that he wanted to work for himself and, in December 1999, he

incorporated his own company through which he now obtains his own consulting

projects.

Toward the end of 1999, Mr. Bhatty was contracted by Goldman Sachs, a

position which was eliminated after 9/11.  However, he did not remain without

work for long.  Shortly after he left Goldman Sachs, he obtained a new consulting

position with ConEd, where he has been an independent contractor since February

of 2002.

Mr. Bhatty describes one of his most joyful moments as the birth of his

daughter, Sehr, on July 17, 2004.  He realized that because of his work and school

responsibilities, he missed many of his son's "milestones" and was determined that

he would not do the same with his daughter.

Mr. Bhatty realized that he was finally achieving the "American dream"

which was his justification for emigrating to the United States and leaving behind

the security of his family in Pakistan.  He obtained his green card in 2000 and he

and Fariha proudly became U.S. citizens in 2005.  He had a close and loving

family and he had a steady income which allowed him to purchase a home.

In letter after letter, Mr. Bhatty's friends, family and colleagues describe the attributes of Mr. Bhatty which they most admire. For instance, Sajjad Ahmad, a friend of over 20 years, explains that Mr. Bhatty **"has succeeded in his professional career on the basis of his work ethics, commitment, and dedication."** Exhibit B.

In addition to his work ethic, Mr. Bhatty is recognized as a family man. He values each and every minute that he is able to spend with his wife and children. His sister-in-law, Farah Aktar notes that Mr. Bhatty **"is an honorable man who dedicates all of his time and energy towards his family."** Exhibit B. Similarly, Tmima Grinvald, a friend and former colleague, explains in detail how

> **"it became abundantly clear how much Abrar is very invested in his son's future and is wholeheartedly willing to guide and nurture him. His love for his wife and daughter motivate him to ensure not only that all their needs are met but also that they have the life they deserve. It is enough to see the look on Abrar's face when his little daughter Sehr runs toward his open arms to know how much he loves her and cares for her. His support and dedication to his family is incredible and his family means everything for him."**

Without question, Mr. Bhatty's family will suffer emotionally and financially during and after Mr. Bhatty's period of incarceration. Because Mr. Bhatty has been the sole source of financial support, steps had to be taken to ease the burden on the family. For one, Fariha had to obtain employment. However,

21

because she has no prior professional work experience, it was difficult for her to obtain a job.  After countless rejections, she eventually found one and has been working since the fall of 2010 as a teacher's aide assisting students with special needs.  The income she earns from this position is not nearly the amount of income that Mr. Bhatty earns and there is a legitimate and very real concern that they will lose their family home during Mr. Bhatty's incarceration.

Attached hereto as **Exhibit C** is a letter from Fariha, in which she sets forth how the criminal charges against Mr. Bhatty have affected her and her family.  A clear testament to his strong relationship with his family is the fact that they have always been and continue to remain supportive of him throughout these proceedings. As the Court can imagine, it has taken great strength to endure the challenges the family has faced over the past three years.  In particular, Fariha describes how their son **"does not know what the future will be without a caring father. . ."**  and that, with respect to their seven year old daughter, **"the idea of spending time away . . . will be the toughest one on him and our daughter."**

As Fariha states in her letter, Mr. Bhatty's absence from the home during his period of incarceration will significantly impact their children.  Their son is in high school and at a critical stage in his life regarding what he will do after he

graduates.  Now, more than ever, he needs the guidance from his father, guidance which will be difficult, if not impossible to provide from prison.  Their daughter, who is still very young, will unquestionably be traumatized when her father is no longer a constant presence in her life.

Despite everything that has happened, Fariha remains resolute in her commitment to her husband.  She states in no uncertain terms:

> **We as a family have forgiven him and stand by him.  Not because what he did was not wrong but because everyone deserves a second chance.  We come from very morally sound families and the thought of the outcome draws a blank to our minds.**
> **. . .**
> **I humbly request to the honorable court to please consider Abrar's case with mercy and compassion, to consider the well being of my children who need their father very much and to consider that I need him as he has always been there with love and guidance in all aspects of our lives.**

Mr. Bhatty realizes that his conduct, and his conduct alone, has destroyed his "American Dream," and along with it, his life and his family's lives.  Above all else, Mr. Bhatty is devastated by how his conduct has and will forever continue to affect his family.  Not a day goes by that he does not think about the embarrassment and humiliation that he has brought to his family.

In determining the length of Mr. Bhatty's sentence, we respectfully ask the Court to consider his background, his remorse, his exemplary conduct since he

was first arrested and the impact that Mr. Bhatty's incarceration will have on his family. We hope that the Court will see that a five year sentence is adequate to fulfill the requirements of § 3553(e).

## THE COURT SHOULD NOT IMPOSE A FINE

In determining whether to punish a defendant with a monetary fine, in addition to considering the factors set forth in 18 U.S.C. § 3553(a), the sentencing court should consider the defendant's income, earning capacity and financial resources; the burden the fine will impose upon the defendant, any person financially dependent on the defendant, or any other person who would be responsible for the welfare of any person financially dependent on the defendant; any pecuniary loss inflicted upon others as a result of the offense; whether and how much restitution is ordered or made; the need to deprive the defendant of illegally obtained gains; and whether the defendant can pass on to consumers or others the expense of the fine. 18 U.S.C. § 3572(a).

A consideration of these factors makes it clear that a fine is not appropriate in Mr. Bhatty's case, and we respectfully request that the Court not impose one. As discussed above, Mr. Bhatty has always been the primary source of financial support in his home and his family will undoubtedly suffer financially as a result of his incarceration. It is also probable that the family will lose their home during

24

Mr. Bhatty's incarceration.

Although Mr. Bhatty has been employed during the pendency of his case, the family has been unable to save money because of the costs associated with these proceedings (*e.g.*, legal fees, monitoring fees, etc.).  Moreover, he will not be earning a similar income during his period of incarceration.  In addition, his criminal record will undoubtedly impact his ability to earn a similar income after his release.  The Probation Department recognized this reality and noted in the PSR that "[b]ased on the defendant's financial profile and the fact that he is facing a five year minimum sentence, he appears unable to pay a fine."  PSR ¶ 73.  Accordingly, we respectfully request that Your Honor not impose a fine as part of the sentence in this case.

## CONCLUSION

Mr. Bhatty comes before this Court having made an incredibly unfortunate decision to engage in unlawful conduct, a decision which has cost him his liberty and his pride.  Even after his release, he will be brandished a "sex offender," and will be subject to the reporting requirements associated therewith.  Throughout the pendency of this case, Mr. Bhatty has assumed full responsibility for his conduct, and he stands ready for sentencing with the fervent hope that this Court will see not just the offense he committed, but his otherwise unblemished history,

background and the impact that his incarceration will have on his family, who

depend on him for guidance and financial and emotional support.

Accordingly, for the aforementioned reasons, we respectfully request that

Your Honor sentence Abrar Bhatty to the statutory minimum – five years

incarceration.  Thank you for your consideration.

DATED:      New York, New York
            January 24, 2012

                              Respectfully submitted,

                              Robert C. Gottlieb (RG1930)
                              LAW OFFICES OF
                              ROBERT C. GOTTLIEB
                              Attorneys for Defendant
                              Abrar Bhatty
                              111 Broadway, Suite 701
                              New York, NY 10006
                              T: (212) 566-7766

On the Brief,
Justin F. Heinrich (JH0512)

cc:    Brendan King, A.U.S.A.
       (via email & ECF)

       Senior U.S. Probation Officer
       Patricia A. Sullivan
       (via email and First Class Mail)